ALBERT C. DORSEY,

                Plaintiff,

  -vs-                              Case No.  6:08-cv-331-Orl-28GJK

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      Plaintiff Albert Dorsey ["Dorsey"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for disability insurance benefits. *See* Doc. No. 1 ("Complaint"). For the reasons set forth below, it is recommended that the Commissioner's decision be **AFFIRMED**.

## I.    <u>BACKGROUND</u>

### A.    General Background

      Dorsey was born on March 31, 1942 and alleges disability as of April 23, 2004. R. 60. Dorsey's previous employment includes working as a distribution clerk, computer operator and supervisor, and an administrative technician at Bank of America from 1972 through 1994, and as a sorter operator and working on dormant accounts at Suntrust Bank and Southtrust Bank from 1996 through 2004. R. 66.  He was also employed by a temporary agency from 1994 through 1996 where he undertook various office assignments. *Id.*

### B.    Medical Records

### 1.    Dorsey's Skin Allergies

Dorsey's medical records indicate that he began seeking treatment from Steven Rosenberg, M.D. for skin irritation as early as September of 2000. R. 272. The medical notes indicate Dorsey is allergic to dust mites, peanuts and wheat. R. 271. In 2001, Dr. Rosenberg noted that Dorsey suffered from recurrent pruritic skin eruption consistent with urticaria. R. 446. Dorsey continued to see Dr. Rosenberg into 2003 for treatment of periodic inflammation. R. 418.

On August 6, 2004, Dorsey was treated by J. Matthew Knight, M.D. R. 218-19. Dr. Knight suspected primary prurigo nodularis. R. 218. On August 20, 2004, Dr. Knight indicated that four biopsies were consistent with prurigo. R. 217. On October 4, 2004, Dr. Knight prescribed Dorsey Triamcinolone cream, increased the Atarax, and told Dorsey to continue the Sarna. R. 216. On November 15, 2004, Dr. Knight noted that the light treatment had been successful, but Dorsey could no longer afford the co-payment. R. 215. Dorsey continued to use the Triamcinolone cream, the Sarna lotion, and take Atarax, which reportedly helped with the itching. R. 215. On January 10, 2005, Dorsey reported to Dr. Knight that his skin irritations were not improving despite using a long list of creams. R. 214.

On September 14, 2005, Dr. Knight referred Dorsey to Philip D. Shenefelt, M.D. R. 169-70. Dr. Shenefelt agreed that Dorsey suffered from "a neurodermatits [sic] component consistent with prurigo nodularis, with a likely allergic contact dermatitis complicating in a patient with atopic dermatitis." R. 170.

Dorsey's records indicate that Neurontin helped with the itching, but he lost his insurance and had to go off his medications. R. 155. On July 19, 2006, Dorsey was still off all medications

except Triamcinolone and Atarax and was still doing much better. R. 154. Dr. Knight indicated

that there continued to be some flat topped dusky papules with central erosion and excoriation.

*Id.*

On August 23, 2006, Dorsey was treated by Hester Miltenberger, M.D. R. 180. Dr.

Miltenberger stated the following:

> I had not seen him since 11/2004. I know of his history of acne but now
> he has frequency. He has his typical acne and constant pruritus. I think
> the best thing to do right now is to do a profile 1 on him . . . He definitely
> has diabetes. . .

R. 180.[1] On October 30, 2006, Dr. Knight noted that he did not have much more to offer Dorsey

considering he was the fifth dermatologist Dorsey had seen for his skin allergies. R. 153. He

stated: "We have done things ranging from light therapy to neurological agents, etc. with

minimal degree of relief. We have taken him off of medications that may be suspected without

relief. He is to let me know if he flares." *Id.*

## 2. Dorsey's Sleep Apnea and Coronary Artery Disease

On January 7, 2003, Dorsey underwent a polysomnogram (sleep study). R. 410. The

sleep study indicated he had moderate obstructive sleep apnea syndrome with snoring and

oxygen desaturation. R. 411. On February 2, 2003, following a second sleep study, Ahmed

Masood, M.D. indicated that Dorsey suffered from obstructive sleep apnea/hypopnea syndrome

and Periodic Limb Movement Disorder (PLMS) Disorder. R. 409. On April 30, 2003, Richard

R. Sieving, M.D. noted symptoms of Dorsey consistent with cardiomyapthy. R. 290. On June

26, 2003, Dr. Sieving indicated that Dorsey felt similar to the last visit, but he continued smoking

---

[1] Aside from this note of Dr. Miltenberger and his prescription of Altos plus Met, there is no other medical record referring to Dorsey's diabetes.

less than one pack of cigarettes per day. R. 288.  Dr. Sieving's assessment indicated stable ischemic cardiomyopathy and continued cigarette smoking. R. 204.  On October 17, 2003, an echocardiogram report indicated Dorsey had coronary artery disease. R. 205.

On July 2, 2004, Dorsey was examined by Donald D. Stoddard, M.D. R. 297.  Dr. Stoddard indicated that Dorsey suffered from chronic pulmonary disease without acute superimposed disease and atherosclerotic and bony degenerative changes. *Id.*  On September 2, 2004, Dr. Sieving reported that Dorsey had no chest pain, no palpitations and no shortness of breath. R. 207.  On September 15, 2004, Juan J. Herran, M.D. opined that Dorsey did not have any active pulmonary issues. R. 317-19.  He also noted that Dorsey continued to smoke cigarettes. *Id.*

### 3. Dorsey's Neck Problems

On August 11, 2004, Richard Bagby, M.D. opined that Dorsey suffered from cervical spondylosis with moderately severe changes at C3-4, C4-5, C5-6 and C6-7. R. 298.  The findings note:

> Vertebral bodies are normal in height and in alignment.  Disc space narrowing in moderate at C3-C4, C4-C5, C5-C6, and C6-C7.  Anterior spurs are abundant.  No significant posterior spurs are noted.  Odontoid is normal.  No congenital abnormality is detected.

R. 298.  On September 24, 2004, Sanjiv Kapil, M.D. diagnosed Dorsey with cervical radiculopathy after hearing complaints of neck pain. R. 316.  There are no additional medical records concerning Dorsey's neck problems.

### 4. Disability Evaluation and Physical Residual Functional Capacity (RFC) Assessments

On August 25, 2004, Nitin Hate', M.D. evaluated Dorsey at the request of the Office of Disability (herein "State Agency"). R. 376. Dr. Hate' noted the following:

1.     This gentleman has generalized pruritis and skin lesions suggestive of scabies, but I cannot rule out systemic disorder such as cancer or Hodgkin's. Scabies lotion can be tried on a small part of the body. States he has lost 34 pounds within the last 3 months and needs further evaluation for cancer.

2.     Shortness of breath which can be attributed to smoking. However, pulmonary function tests were normal.

3.     Arthritis along the spine, consistent with his age.

R. 378. Dr. Hate' noted that Dorsey will have difficulty in any strenuous physical activity due to pain. *Id.*

On September 15, 2004, Dorsey underwent an RFC assessment wherein it was indicated that Dorsey could occasionally lift 20 pounds, frequently lift 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 355. The State Agency consultant indicated that Dorsey should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. R. 358. The consultant also indicated that the severity of the symptoms alleged by Dorsey were consistent and credible. R. 359.

On March 29, 2005, Dorsey underwent an RFC assessment by Eric C. Puestow, M.D., wherein it was indicated that Dorsey could occasionally lift 20 pounds, frequently lift 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 192. Dr. Puestow noted he could occasionally climb, balance, stoop, kneel, crouch or crawl. R. 193. He indicated that Dorsey should avoid extreme

cold or heat, wetness, humidity, and fumes, odors, dusts, gases, poor ventilation, etc. R. 195. Dr.

Puestow opined that the symptoms are attributable to a medically determinable impairment but

the severity or duration of the symptoms is disproportionate to the expected severity or expected

duration on the basis of Dorsey's medically determinable impairment(s). R. 196.

### 5. Dorsey's Mental Health

On August 26, 2004, Dorsey underwent a mental status evaluation performed by Michael

Harrell, Ph.D. R. 384. Dr. Harrell noted that Dorsey had moderate to severe chronic itching

throughout the interview. R. 385. He also indicated that Dorsey smoked approximately one

package of cigarettes each day, occasionally drank alcoholic beverages, and denied any history

of substance abuse or dependency. *Id.* He noted that Dorsey was currently on the following

medications: Provigil, Terazosin, Altace, Ataraz, Zoloft, Zocor, Zyrtec and Singulair. *Id.* Dr.

Harrell diagnosed Dorsey with Depressive Disorder, not otherwise specified (NOS), with

dysthymic features and gave him a Global Assessment of Functioning (GAF) score of 55. R.

385-86. Dr. Harrell noted the following:

> [Dorsey] reports a number of physical conditions, the worst being
> chronic itching from psoriasis and eczema. He is depressed over his
> conditions and lost his job at a bank for sleeping on the job. [Dorsey]
> has sleep apnea and feels fatigued. He has been seeking extensive
> medical help with no clear prognosis. [Dorsey] is in need of continuing
> treatment for his skin conditions. He appears able to handle his own
> funds at this time.

R. 386.

On September 8, 2004, Dorsey underwent a psychiatric review by Mary Ann Wharry,

Psy. D. wherein it was indicated that Dorsey suffered from impairment(s) not severe, affective

disorders and anxiety-related disorders. R. 362. Dr. Wharry opined that Dorsey had Depressive

Disorder with dysthymic features. R. 365. Dr. Wharry indicated that Dorsey suffered from panic attacks. R. 367. Dr. Wharry also stated that Dorsey had mild limitations in restrictions of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. R. 372. Finally, she reported:

> [Dorsey] [p]erforms shopping, light cooking, cleaning. Manages own funds and personal hygiene. Attends church. No problems with concentration reported. No trouble completing tasks. Capable of following instructions and dealing with deadlines. Reports anxiety associated with heights. Does not require special reminders for routine activities. Based on clinical data and review of functioning, [Dorsey's] status appears non-severe from [mental health] MH perspective at this time.

R. 374.

On February 11, 2005, Dorsey underwent a psychiatric review by A. Alvarez-Mullin, M.D. wherein it was indicated that Dorsey suffered from impairment(s) not severe, coexisting nonmental impairment(s) that require referral to another medical specialty, and affective disorders. R. 257. Dr. Alvarez-Mullin opined that Dorsey had Depressive Disorder, NOS with dysthymic features. R. 259. Dr. Alvarez-Mullin also stated that Dorsey had mild limitations in restrictions of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. R. 266. Finally, Doctor Alvarez-Mullin indicated that the evidence does not establish the presence of the "C" criteria and that the mental impairment was not severe. R. 267-68.

### C.   Administrative Background

On June 2, 2004, Dorsey protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning April 23, 2004. R. 60.   Dorsey's application was denied initially and upon reconsideration. R. 47; 51.

On March 20, 2007, the Honorable Joan Lawrence, Administrative Law Judge (the "ALJ") held a hearing on Dorsey's disability claim.   R. 530-51.   Attorney Carol Leininger represented Dorsey at the hearing.   R. 530.   Dorsey and vocational expert ("VE") Paul Dolan testified at the hearing.   *Id.*   At the hearing, Dorsey testified to the following:

- His medication made him fall asleep at work;

- He suffers from asthma and sleep apnea and he wakes up during the night due to his skin itching;

- He also suffers from bladder control problems and hypertension;

- He is a diabetic;

- He has mood swings; and

- He performs light housework, such as sweeping, light cooking, and grocery shopping with his wife.

R. 530-51.  The VE testified as to Dorsey's work history in terms of the exertional level and skill level involved. R. 548.[2]  The VE also testified that with the RFC accorded by the ALJ, Dorsey could perform his past relevant work as a customer service representative, computer operator, and personnel and/or sorter clerk, as those jobs are generally performed in the nationally

---

[2] VE:  "… personnel clerk … sem-skilled, exertional level is sedentary … sorter … semi-skilled, exertional level is sedentary … customer service representative … skilled, exertional level is light …" R. 548.

economy. R. 549-50.[3]

On July 2, 2007, the ALJ issued a decision denying Dorsey's application for disability finding the following:

1. Dorsey has the following severe impairments: recurrent prurigo nodularis, asthma, coronary artery disease, sleep apnea, and depressive disorder, NOS, with dysthymic features;

2. Dorsey has the RFC to lift up to 20 pounds occasionally and up to 10 pounds frequently; he can sit, stand and walk each for up to at least 6 hours in an 8 hour workday with no more than occasional balancing, climbing, stooping, crouching, crawling, and kneeling. He should avoid exposure to temperature extremes, wetness, humidity, hazards, dust, fumes, smoke, chemicals, and noxious gases; and

3. Dorsey is capable of performing past relevant work as a customer service representative, computer operator, and personnel and sorter clerk.

R. 17-22.

The ALJ noted: "After considering the evidence of the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 17. In making such statement,

---

[3] ALJ: "Please assume an individual with the same work history and educational background as the claimant. For the first hypothetical, please assume that he is restricted to a light exertional level, that he can do no more than occasional balancing, climbing, stooping, crouching, crawling, or kneeling, that he must avoid extreme temperatures, wetness, humidity and hazards and that because of breathing difficulty, he must be – he is precluded from work that exposes him to dust, fumes, smoke, chemicals, or noxious gases. With those restrictions, would he be able to return to the work that he previously did other than the work that included medium?"
VE: "Within the hypothetical, I believe a hypothetical individual would be able to go back to work as a customer service representative as defined and as performed, personnel clerk as defined and as performed, sorter as defined. It appears from the descriptions in the file not as performed; computer operator as defined. Well, it's light to medium, so as defined, not as performed and supervisor as defined and as performed." R. 549-50.

the ALJ stated:

> The claimant's reported daily and social activities are not suggestive of a totally disabled individual. In January 2005, the claimant reported that he prepared meals, made beds, got the grandson off to school and the wife off to work, handled finances, read the paper, watched television, used a personal computer, played with the grandchildren, made beds, tidied up, did laundry, drove, shopped for groceries, and attended church. At the hearing, the claimant testified he helps with "light stuff", sweeps the floor every morning, reads the newspaper, and does light cooking.

R. 17. The ALJ accorded the State Agency physician's opinion "considerable weight." R. 16.

Dorsey requested review by the Appeals Council of the ALJ's decision denying his disability benefits, and on January 18, 2008, the Appeals Council denied review. R. 2-4. On March 6, 2008, Dorsey timely appealed the Appeals Council's decision to the United States District Court. Doc. No. 1. On July 21, 2008, Dorsey filed a memorandum of law in support of his appeal. Doc. No. 14. On September 19, 2008, the Commissioner filed a memorandum in support of his decision that Dorsey is not disabled. Doc. No. 15. The appeal is ripe for determination.

## II.   **THE PARTIES' POSITIONS**

Dorsey assigns several errors to the Commissioner and categorizes them into two arguments: 1) the ALJ failed to properly determine Dorsey's past relevant work and failed to comply with Social Security Ruling (SSR) 82-62; and 2) the ALJ failed to consider all of Dorsey's serious medical impairments, failed to consider Dorsey's combination of impairments in determining RFC, and failed to adequately evaluate Dorsey's symptoms, particularly fatigue, in determining RFC.

The Commissioner argues that substantial evidence supports his decision to deny Dorsey his claim for disability benefits. He maintains that: 1) the ALJ properly found that Dorsey could

return to his past relevant work as a customer service representative, a computer operator, and a personnel or sorter clerk; 2) substantial evidence supports the ALJ's RFC finding; and 3) the ALJ properly addressed Dorsey's medical impairments and symptoms.

## III.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities.  20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§

404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as

it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do

14

more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

## IV.    ANALYSIS OF ALLEGED ERRORS

### A.    Whether the ALJ Failed to Consider All of Dorsey's Serious Medical Impairments

The ALJ found that Dorsey has the following severe impairments:  recurrent prurigo nodularis, asthma, coronary artery disease, sleep apnea, and depressive disorder, not otherwise specified, with dysthymic features. R. 12.  Dorsey argues that the ALJ failed to consider all of his serious medical impairments, thereby failing to base his decision on substantial evidence, failing to consider Dorsey's combination of impairments, and failing to adequately evaluate his symptoms in determining his RFC. Doc. No. 14 at 14.  Particularly, Dorsey argues that the ALJ

failed to consider Dorsey's diabetes, hypertension and cervical spine stenosis. *Id.*

Dorsey maintains that the ALJ erroneously concluded that there was no supporting medical evidence supporting Dorsey's diagnosis of diabetes because Dr. Miltenberger prescribed Dorsey Actos plus Met 15/500 mg 1 tablet once a day. *Id.*; R. 180. Dorsey also maintains that the ALJ failed to discuss Dorsey's neck pain and related upper extremity pain despite the diagnoses of "moderately severe" changes at C3-4, C4-5, C5-6, and C6-7 with cervical spondylosis and abundant anterior spurring, and cervical radiculopathy suggestive of nerve root impingement in his neck. Doc. No. 14 at 15; R. 298, 315. Finally, Dorsey argues that the ALJ failed to discuss the severity of his hypertension. Doc. No. 14 at 15.

The Commissioner argues that "it is not the diagnosis of an impairment that determines disability, but the effect the impairment has on the claimant's ability to function." Doc. No. 15 at 7. "A diagnosis alone does not demonstrate the presence of a severe impairment." *Id.* (citing *Moore*, 405 F.3d at 1213, n.6). The Commissioner states that, aside from Dr. Miltenberger's note and prescription, there was no additional medical evidence regarding the diagnosis of diabetes. Doc. No. 15 at 8. As to Dorsey's neck and/or back complaints, the Commissioner points out that after being prescribed a trial of Celebrex and directed to return in four weeks, there are no medical records evidencing additional treatment for neck and/or back complaints. *Id.* at 9. The Commissioner also states that aside from a reported high blood pressure of 100/66 in September of 2004, the medical records do not otherwise indicate Dorsey suffered from hypertension. *Id.* Also, the ALJ acknowledged Dorsey's testimony as to hypertension but did not find it to be a severe impairment. *Id.*

The Commissioner also maintains that although Dorsey was diagnosed with diabetes,

cervical radiculopathy, and hypertension, he did not identify any functional limitations associated with those conditions. Doc. No. 15 at 9. Finally, the Commissioner argues that the ALJ correctly assessed Dorsey's subjective complaints of pain. *Id.* at 10. Specifically, the ALJ observed that none of the treating or examining physicians had assigned any specific functional limitations to Dorsey or opined that he was disabled. *Id.* at 11. Also, the ALJ analyzed and found that Dorsey's daily activities indicated he was not disabled. *Id.*

The ALJ has a duty to fully and fairly develop the record. *Welch*, 854 F.2d at 438; *Cowart*, 662 F.2d at 735-36. As previously discussed, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison*,

814 F.2d at 588-89; *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega*, 265 F.2d at 1219.

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged symptoms.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  *Foote*, 67 F.3d at 1561.  Where an ALJ decides not to credit a claimant's testimony about [pain], the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding.  *Id.* at 1561-62.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562.  The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Foote*, 67 F.3d at 1562.  The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case.  *Id.*  Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding.  *Id.*

As discussed by the Commissioner, the medical record as a whole lacks foundational

support that Dorsey suffered physical limitations due to diabetes, cervical radiculopathy and hypertension. First, only Dr. Miltenberger indicated that Dorsey has diabetes and no physician opined that his diabetes causes physical limitations or affects his ability to work. R. 180. Second, after being treated for neck pain with a prescription of Celebrex, Dorsey did not seek further medical attention as to neck pain. R. 316. Third, in September 2004, Dorsey was diagnosed with benign essential hypertension and his blood pressure was 100/66. R. 201-02. In November 2004, it was noted that Dorsey's blood pressure was 115/70 "which is perfect." R. 270. Subsequent medical records do not address Dorsey's blood pressure. R. 153-217. The ALJ considered each of these conditions and determined they were not severe. R. 13.

Finally, the ALJ properly analyzed Dorsey's subjective complaints concerning his symptoms. The ALJ noted that Dorsey's medications make him drowsy and referenced his testimony that they prevent him from staying awake. R. 13. However, the ALJ stated that Dorsey's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. R. 17. In making such statement, the ALJ stated:

> The claimant's reported daily and social activities are not suggestive of a totally disabled individual. In January 2005, the claimant reported that he prepared meals, made beds, got the grandson off to school and the wife off to work, handled finances, read the paper, watched television, used a personal computer, played with the grandchildren, made beds, tidied up, did laundry, drove, shopped for groceries, and attended church. At the hearing, the claimant testified he helps with "light stuff", sweeps the floor every morning, reads the newspaper, and does light cooking.

R. 17. The ALJ also noted the following:

> The claimant's coronary artery disease was treated successfully. He reported no chest pain, palpitations, or shortness of breath to his treating cardiologists during his last office visit of September 2004. The record does not indicate that the claimant returned to said cardiologist for further treatment. Despite repeated admonitions from his treating

19

physicians, the claimant has continued smoking 1 pack of cigarettes a day. This tobacco use undoubtedly contributes to the claimant's asthma and his failure to follow prescribed treatment recommendations in this regard further erodes his credibility. The claimant's prurigo nodularis was treated conservatively with Atarax and Triamcinolone. None of the claimant's treating or examining physicians assigned any specific limitations to his ability to function and none opined that he is disabled.

R. 16. The ALJ clearly articulated his reasons for discrediting Dorsey's testimony. Accordingly, his opinion can not be disturbed. Thus, the undersigned recommends that substantial evidence supports the ALJ's decision.

**B.      Whether the ALJ Failed to Properly Determine Dorsey's Past Relevant Work and Failed to Comply with SSR 82-62**

The ALJ determined that Dorsey could perform past relevant work as a customer service representative, a computer operator, and a personnel and/or sorter clerk. R. 17. Dorsey argues that one of those jobs, the position of computer operator, may have been performed as early as 1972 according to Dorsey's work background at R. 66. Doc. No. 14 at 11. Dorsey maintains that there is a presumption that work performed more than fifteen years ago is inapplicable. *Id.* at 12 (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987)). Thus, Dorsey argues that it would not be a "reasonable determination" to consider the job of a computer operator as past relevant work. Doc. No. 14 at 12-3 (citing *Barnes*, 932 F.2d at 1358).

Dorsey also argues that at the evidentiary hearing, testimony was not elicited to specify when Dorsey actually performed work as a computer operator while with Bank of America. Doc. No. 14 at 11. Finally, Dorsey argues that the ALJ failed to make findings as to the physical and mental demands of Dorsey's past relevant work as he actually performed them, which fails to comply with SSR 82-62. Doc. No. 14 at 14 (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)).

In his brief, the Commissioner states that even if Dorsey's work as a computer operator was performed more than fifteen years ago, the VE and the ALJ identified other past relevant work that Dorsey could perform with his RFC. Doc. No. 15 at 4. Accordingly, the Commissioner maintains that Dorsey did not meet his burden of proving he was no longer capable of performing his past relevant work. *Id.* at 4-5 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212-14 (11th Cir. 2005) for the proposition that the ALJ's RFC assessment is supported by substantial evidence). The Commissioner also argues that the physical and mental demands of Dorsey's past relevant work were appropriately discussed by the VE as generally performed in the national economy. Doc. No. 15 at 5; *see above* at p. 8, n.3; p. 13.

As mentioned above, step four of the ALJ's analysis is whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's RFC. *See* 20 C.F.R. § 404.1545(b). The Court has also addressed that the term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965 (emphasis added). If the claimant has the RFC to do his past relevant work, the claimant is not disabled.

The ALJ did not err in determining Dorsey's past relevant work. Even if Dorsey performed work as a computer operator more than 15 years ago, the VE provided, and the ALJ adopted the VE's opinion, that Dorsey could perform alternative past relevant work of a customer service representative, a personnel and/or a sorter clerk. Thus, even assuming Dorsey

performed work as a computer operator more than 15 years ago, *Macia* is inapplicable in this case because the ALJ provided additional past relevant work.  In addition, the VE testified as to the exertional level and skill involved with each past relevant work. R. 548; *see above* p. 8, n.2. Finally, the VE complied with SSR 82-62 by addressing each past relevant work as either actually performed or as it is generally performed in the national economy. *See* p. 8, n.3. Accordingly, the Court recommends that the Court find the ALJ's decision as to Dorsey's past relevant work is supported by substantial evidence.

### V.    CONCLUSION

For the reasons stated above, it is recommended that the Commissioner's decision be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within eleven (11) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 26, 2009.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

The Honorable John Antoon II
United States District Judge

James W. Keeter, Esq.
P.O. Box 4979
Orlando, Florida          32802

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920


The Honorable Joan Lawrence
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
800 South Gay Street, Suite 700
First Tennessee Plaza
Knoxville, Tennessee 37929-9703